CLYDE HARRISON LARGE

*v.*

ARLIN DICK et al.

KENNETH EUGENE LARGE

*v.*

ARLIN DICK et al.

(*Knoxville,* September Term, 1960.)

Opinion filed December 9, 1960.

Rehearing Denied March 10, 1961.

THOMAS W. THOMSON, MARNE S. MATHERNE, and WILL
D. SWANNER, Knoxville, for plaintiffs.

LEN G. BROUGHTON, JR., Knoxville, for defendants.

MR. JUSTICE FELTS delivered the opinion of the Court.

Each of these cases is a common law action in tort for
damages for alleged wrongful interference by defendants
with plaintiff's employment, causing him to be discharged
and to be thereafter unable to find employment or work at
his trade.

Plaintiffs' declarations each alleged the same facts,
which were challenged by demurrers. The Trial Judge
sustained the demurrers and dismissed the actions. Plain-
tiffs brought the cases here, and insist the declarations
stated a good cause of action. Each averred in substance
the following facts:

Plaintiff lived in Oak Ridge, Tennessee, and was there
pursuing his trade as a painter. He was employed by
John Prater, a contractor, to paint the Snow White Res-
taurant in Oak Ridge, Prater having contracted with
John Sparks, the owner of the restaurant, to paint it.

While plaintiff was thus engaged in his employment,
painting the restaurant, the defendants, Local Union 437,

its parent Union,[1] and their agent Dick, well knowing the premises and "conspiring maliciously and intentionally to injure plaintiff in his trade," demanded that he be discharged because he was a non-union man, accompanying their demand with the threat that if he was not discharged immediately, they would set up and maintain a union picket line around the restaurant.

In compliance with their demand and in consequence of their threat, plaintiff was discharged and because of their wrongful interference, he has since been unable to work at his trade. Thus, defendants intentionally and maliciously caused plaintiff to be discharged from his employment and to be unable to find other like employment, and thereby deprived him of his right to work and earn a living at his trade.

Along with the above averments, there were other averments undertaking to state a cause for violation of our statutes, first our open shop or "Right to Work" law (T.C.A. secs. 50-208 to 50-212), then our statute (T.C.A. sec. 47-1706) forbidding one to procure another to breach his contract. These matters, however, were eliminated by amendment. So, we have to consider only whether the remaining averments stated a common law cause of action.

■ Taking these allegations as true, as must be done on demurrer, they stated a case against defendants for

---

[1] The suits were brought against the parent union, Brotherhood of Painters, Decorators, and Paperhangers of America, LaFayette, Indiana; its local union, Local 437, Brotherhood of Painters, Decorators, and Paperhangers of America, Knoxville, Tennessee; and their business agent Arlin Dick. The first named defendant was dismissed on its plea in abatement, no question as to which is before us; and the actions proceeded against the latter two defendants.

intentional infliction of damage to plaintiff, which was malicious and tortious and actionable, if done without privilege or legal justification. *Hutton v. Watters,* 132 Tenn. 527, 532, 179 S.W. 134, 135 L.R.A. 1916B, 1238 (citing, among many others, the case of *Mogul S. S. Co. v. McGregor,* L.R. 23 Q.B. Div. 598, 613 (1892), A.C. 25) ; *Advance Music Corp. v. American Tobacco Co.,* 296 N.Y. 79, 70 N.E.2d 401; *Barile v. Fisher et al.,* 197 Misc. 493, 94 N.Y.S.2d 346, 350.

In *Mogul S. S. Co. v. McGregor,* supra, Lord Justice Bowen said: ''Intentionally to do that which is calculated in the ordinary course of events to damage, and which does, in fact, damage another in that other's property or trade is actionable if done without just cause or excuse. Such intentional action when done without just cause or excuse is what the law calls a malicious wrong.''

''At common law there was a cause of action whenever one person did damage to another willfully and intentionally, and without just cause or excuse.'' *Skinner & Co. v. Shew & Co.* (1893) 1 Ch. 413, 422. Again, in *Aikens v. State of Wisconsin,* 195 U.S. 194, 25 S.Ct. 3, 5, 49 L.Ed. 154, Mr. Justice Holmes, for the Court, said:

''It has been considered that, prima facie, the intentional infliction of temporal damages is a cause of action, which, as a matter of substantive law, whatever may be the form of pleading, requires a justification if the defendant is to escape. *Mogul S. S. Co. v. McGregor,* L.R. 23 Q.B. Div. 598, 613 (1892), A.C. 25.''

■ Every man has the right of property in his own labor, and the right to work without interference; and whoever intentionally interferes with this right is liable in tort for the damage caused, unless he can show a priv-

ilege or justification for such interference. *Dukes v. Brotherhood of Painters, Decorators & Paperhangers of America, Local Union No. 437, et al.,* 191 Tenn. 495, 500-501, 235 S.W.2d 7, 9-10, 26 A.L.R.2d 1223; Annotated; *Crosby v. Rath,* 136 Ohio St. 352, 25 N.E.2d 934.

Defendants having, by their demurrers, admitted their intentional interference with this right of plaintiff, it remains to consider whether, on the facts alleged, they can show a privilege or justification for such interference; that is, whether, in order to advance their economic self-interest as union men, they had the right to demand that plaintiff be discharged because he was a non-union man, and to enforce their demand by a threat to picket the place.

We can find nothing in the law of this state to justify such an exertion of the combined power of a union against an individual to deny him the right to work because he is not affiliated with a union. On the contrary, the traditional common-law view was that such a combination was illegal as an unreasonable restraint upon trade, and was a "civil conspiracy." *Bailey v. Master Plumbers,* 103 Tenn. 99, 107, 52 S.W. 853, 854, 46 L.R.A. 561; *Flatt v. Barber's Union,* 202 Tenn. 345, 349, 304 S.W.2d 329, 330, certiorari denied, 355 U. S. 904, 78 S.Ct. 329, 2 L.Ed. 2d 259; see *United Mine Workers of America v. Meadow Creek Coal Co.,* 6 Cir., 263 F.2d 52, 61.

Accordingly, at common law, many cases hold a labor union and its agents have no right to engage in picketing, or boycotting, or threats to do the same, for the purpose of compelling an employer to discharge an employee unless he becomes a member of the union. *Read v. Friendly Soc.* [1902], 2 K.B. (Eng.) 732, 1 B.R.C. 503—

C.A.; *Crosby v. Rath*, supra; *Colonial Press, Inc. v. Ellis et al.*, 1947, 321 Mass. 495, 74 N.E.2d 1; cases cited in the annotations, 29 A.L.R. 532, 543, 84 A.L.R. 43, 98-100; 26 A.L.R.2d 1227, 1284-1285; James C. Kirby, Jr., Tennessee Labor Law, 8 Vand.L.Rev. 73, 81-83, 90, 94, 100, 104; Cf. Prosser on Torts (2nd ed.) 743, and cases there cited.

"(I)t is the settled law that non-union employees discharged by reason of the execution of a closed shop contract have a right of action against the union (and likewise against the employer, if the logic of the situation controls, but in few cases has the employer been joined as a party defendant) for interfering with his right of employment. Where the closed shop contract is legal, no right of action exists, to be sure, but this is because there is justification and not for the lack of any substantive right." 1 Teller, Labor Disputes and Collective Bargaining (1940), sec. 46, page 112.

So, in many states where the all-union or closed shop is legal, the union and its agents are held to be privileged or justified in exerting their combined coercive power to procure the discharge of a non-union man. *Barile v. Fisher*, 197 Misc. 493, 94 N.Y.S. 346, 351; Prosser on Torts (2nd ed.), 743, and cases there cited.

But we do not see how such coercive action can be recognized as privileged or justified in a state where the all-union or closed shop is illegal, or in states such as Tennessee, and some 18 other states which have open shop or "right to work" laws, Tennessee's statute being chapter 36, Acts 1947 (T.C.A. secs. 50-208 to 50-212), which Act has been upheld as valid and constitutional. *Mascari v. International Brotherhood, etc.*, 187 Tenn. 345, 215 S.W. 2d 779, certiorari denied 335 U.S. 907, 69 S.Ct. 410, 93

L.Ed. 440. See also, *Local Union No. 10, A. F. of L. v. Graham,* 345 U.S. 192, 97 L.Ed. 946.

Our case of *Dukes v. Brotherhood of Painters, Decorators & Paperhangers of America Local Union No. 437,* supra, is relied on by both parties. It does not fully support either. It was not a clash between union and non-union, but an inter-union dispute. Dukes, employed as a union man, charged the union and its agents had procured him to be discharged by making false and malicious statements to his employer that he had been expelled from the union, and by demanding that he be fired, or else the union would go on strike.

This was held to state a good common-law cause of action, and to entitle Dukes to recover all the damages he could prove on the remand. So, this case affirms the common-law principle that an employee has the right to be secure in his employment against wrongful interference by the union or its agents; and to that extent, it supports the right of plaintiffs in the cases before us.

For these reasons, we conclude that each of the declarations stated a good common-law cause of action, and that the demurrers should be overruled and defendants allowed to plead further.

Reversed and remanded.

On Petition to Rehear

Defendants have filed a petition to rehear complaining of our holding that plaintiff's declaration stated a good cause of action.

Most of such complaint seems due to a mistaken notion of learned counsel that this holding was based upon a

violation of our statute known as the Right-to-Work Law (T.C.A. secs. 50-208 to 50-212); and it is said that the declaration, as finally amended, charged no such violation and afforded no basis for our holding.

Our opinion shows our holding was based on the common law; that at common law " 'the intentional infliction of temporal damage is a cause of action, which, as a matter of substantive law, whatever may be the form of pleading, requires a justification if the defendant is to escape' " (opinion, at page 694); that defendants could not justify their infliction of such damage to plaintiff at common law, by showing their purpose was to deny him the right to work "because he was a non-union man," and thus advance their interest as union men (opinion, at page 694); and that still less could they justify such conduct under the common law of this state since the enactment of our statutes guaranteeing the right to work alike to union and non-union men and outlawing the all-union shop or union monopoly.

Petitioners urge some other matters which have been fully considered, but we do not think they require any further discussion than that which we have already undertaken in our former opinion.

The petition presents no new matter of fact or law overlooked and nothing not already fully considered and determined by us in our former decision; and we are satisfied to adhere to that decision.

The petition is, therefore, denied at petitioner's cost.