**William David GIFFORD and wife, Nancy Gifford, Plaintiffs–Appellants,**

v.

**CITY OF GATLINBURG, Clell Ogle, and Cindy Cameron, Defendants–Appellees.**

Court of Appeals of Tennessee, Eastern Section.

Feb. 3, 1995.

Permission to Appeal Denied by Supreme Court May 30, 1995.

Richard T. Wallace, Ogle & Wallace, P.C., and Dwight E. Stokes, Galyon & Stokes, Sevierville, for plaintiffs-appellants.

Pamela L. Reeves, Watson, Hollow & Reeves, Knoxville, for defendants-appellees.

## OPINION

FRANKS, Judge.

Plaintiffs brought this action on August 6, 1991, essentially alleging the City of Gatlinburg ("City") had wrongfully terminated plaintiff from employment, and that defendants Ogle and Cameron had harassed plaintiff and had conspired to induce the breach of plaintiff's employment contract with the City.

The Trial Judge granted defendants summary judgment principally on the bases the causes of action were not timely filed and plaintiffs have appealed.

Plaintiff was employed in 1969 by the City as a fire fighter, and was certified as an Emergency Medical Technician (EMT) in 1977. In 1987 plaintiff's EMT recertification was due. He completed the necessary paperwork and gave the papers to his immediate supervisor, who in turn submitted the paperwork to the Fire Chief, Clell Ogle ("Chief"), who in turn was to forward the paperwork, along with the required fee to the Nashville state office responsible for recertification.

When plaintiff did not receive his recertification in July or August of that year he contacted the Director for East Tennessee, and inquired as to the status of his recertification. He was advised that the Nashville office was in the process of relocating and that possibly caused the delay. Plaintiff made no further inquiry until the spring of 1989 when he undertook to find out why he was not recertified. In February of 1990 he sent a memorandum to the Chief to the effect that the Nashville office had no record of having received plaintiff's 1987 recertification application or fee, and that he had not been recertified. Subsequently, he received a memorandum from Cameron, the City Manager ("Cameron"), placing him on disciplinary suspension without pay for 60 days, and requiring him to obtain recertification during that period of time or be terminated. Upon further checking, plaintiff determined the check and forms for his recertification were sent to the state office in November of 1987, which was beyond the deadline for filing for recertification. He advised Cameron, and she modified the disciplinary action, affirming the suspension without pay, and placing him on probation for six months, but allowed him one year to obtain his recertification in order to avoid termination.

On August 2, 1990, plaintiff, after running some errands, returned to his home to find his house on fire. In his deposition he stated that the stress of this event, combined with the apparently malicious burning of his pickup truck, caused him to "snap" and he experienced what was described as a dissociative episode. Although he claimed no recollection of his behavior, according to witnesses on the scene, he obtained a loaded revolver from his house and inquired where he could find the Chief and Cameron and stated they were trying to destroy his family and he was going to put a stop to it. Police officers present intervened and criminal charges were filed against him.

Plaintiff was terminated on August 6 for his actions and behavior on August 2, and he timely filed a request for a hearing before the City Manager in accordance with the

Personnel Rules and Regulations of the City of Gatlinburg. The City Manager appointed the City Judge as a substitute hearing officer who conducted the hearing on August 20. Following the hearing on August 22, 1990, the hearing officer affirmed plaintiff's dismissal from employment.

■ Plaintiff's first issue on appeal is he was denied due process by the City Manager's failure to serve as a hearing officer, as required by the Personnel Rules and Regulations of the City of Gatlinburg. It is undisputed that the Rules and Regulations are binding on the City and it is also undisputed that the City Manager failed to serve as a hearing officer, in contravention of the Rules. Plaintiff essentially charges that the City proceeded illegally to fire him and affirm his termination, bringing his complaint squarely within the purview of T.C.A. § 27–9–101, *et seq.* *See Huddleston v. City of Murfreesboro,* 635 S.W.2d 694 (Tenn.1982).

Plaintiff had 60 days from the time the hearing officer affirmed his dismissal to file a petition of certiorari in chancery court in order to comply with the statute and obtain judicial review of his termination. Plaintiff did not avail himself of this procedure and his complaint was not timely filed on this issue.

The Trial Judge granted summary judgment to defendants on plaintiff's claims for tortious interference with contract. Plaintiff argues on appeal that the Trial Court applied the wrong statute of limitations, and we agree. In *Large v. Dick,* 207 Tenn. 664, 343 S.W.2d 693 (1960), the Supreme Court said that "[e]very man has the right of property in his own labor, and the right to work without interference; and whoever intentionally interferes with this right is liable in tort for the damage caused, unless he can show a privilege or justification for such interference." (Citations omitted). *Also see Huddleston, supra.* and *Carruthers v. Cement Masons Local Union,* 779 F.2d 320 (6th Cir. 1985).

■ The plaintiff, however, is barred from proceeding under the three-year statute of limitations. Plaintiffs' cause of action accrued when the injury occurred or should have been discovered by a reasonable person, i.e., when plaintiff knew or reasonably should have known the cause of action exited. *See Stone v. Hinds,* 541 S.W.2d 598 (Tenn.App. 1976). In this case, the alleged act that related to his cause of action for tortious interference with contract was the Fire Chief's alleged intentional and wilful failure to timely submit plaintiff's recertification papers and fee until after the deadline for the application had expired. The Fire Chief's actions occurred from June to November of 1987, and plaintiff's injury resulting from the alleged act was the loss of certification which occurred that year.

■ Plaintiff testified he knew of instances where recertifications had been delayed. However, he had not heard of any that had been more than one year late. But plaintiff made no further inquiry. On the record before us we do not believe reasonable minds would differ that a reasonable person would be put upon inquiry when he failed to receive a recertification within one year following the time the application should have been filed. Mere ignorance or failure of a plaintiff to discover his cause of action or subsequent resulting damages will not prevent the statute from running. *See Bodne v. Austin,* 156 Tenn. 353, 2 S.W.2d 100 (1928).

Plaintiff argues the real injury suffered was his termination, and that the statute of limitations should run only from the time he was terminated. While his termination may have been the ultimate injury, he was injured in 1987. While plaintiff may not have known that loss of certification would result in termination, he knew or should have known that decertification would result in demotion and loss of income. In *Woods v. Sherwin–Williams Co.,* 666 S.W.2d 77 (Tenn.App. 1983), we said in discussing the discovery rule: "[T]he rule applies only in cases where the plaintiff does not discover and reasonably could not be expected to discover that he has a right of action. It does not ... permit a plaintiff to wait until he knows all of the injurious effects or consequences of a tortious act. The statute is tolled only during the period when the plaintiff has no knowledge at all that a wrong has occurred, and, as a reasonable person, is not put on inquiry." Plaintiff was on notice in 1987, that something was amiss, and at all subsequent times

**296**

he knew that he had not received his recertification. There is no plea that defendants affirmatively concealed their actions from the plaintiff, and accordingly on these facts, the discovery rule is inapplicable.

Finally, plaintiff argues that the Trial Court erred in its finding that the City was immune from suit, pursuant to the Governmental Tort Liability Act. He argued that the Court, in characterizing his claim as one for "wrongful discharge", an intentional tort, failed to consider the gravamen of the complaint that his contractual rights of employment were violated by the City.

We resolve this issue against plaintiff because if the claim sounded in tort, there is no waiver of immunity under the Act for intentional tort. *See Jenkins v. Loudon County,* 736 S.W.2d 603 (Tenn.1987). Moreover, plaintiff's contractual rights with respect to his employment were finally determined by the City in the August 20 hearing. Accordingly, for the reasons stated herein we affirm the judgment of the Trial Court in dismissing plaintiffs' actions against the defendant City and its two employees.

The cause is remanded with cost of the appeal assessed to appellants.

SUSANO, J., and CLIFFORD E. SANDERS, Senior Judge, concur.