IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

# RICHARD A. LEEMIS v. PAUL O. RUSSELL, JR.

**Direct Appeal from the Circuit Court for Shelby County**
**No. 97974    Robert A. Lanier, Judge**

---

**No. W1999-00352-COA-R3-CV - Decided May 24, 2000**

---

This appeal arises from a dispute regarding the termination of Plaintiff Richard A. Leemis from his employment with the Regional Medical Center at Memphis ("The Med"). Mr. Leemis filed a complaint against Defendant Paul O. Russell, Jr., the president of Medical Services Research Group, Inc. ("MSRG"), alleging that Mr. Russell intentionally interfered with his employment relationship with The Med and induced or procured the termination of his employment. The trial court granted a motion for summary judgment filed by Mr. Russell, finding that Mr. Leemis' complaint failed to state a cause of action upon which relief may be granted. We conclude on appeal that, although Mr. Leemis' complaint does not state a cause of action for inducement or procurement of a breach of contract, it does state a claim for intentional interference with employment relations. Thus, insofar as it disposed of Mr. Leemis' procurement or inducement claim, the trial court's order is affirmed. To the extent, however, that it disposed of Mr. Leemis' interference claim, the trial court's order granted a summary judgment to Mr. Russell is reversed. Accordingly, we remand the cause for a trial to determine the merits of Mr. Leemis' claim against Mr. Russell for intentional interference with employment relations.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in part; Reversed in part; and Remanded**

FARMER, J., delivered the opinion of the court, in which CRAWFORD, P.J., W.S., and HIGHERS, J., joined.

Erich M. Shultz, Memphis, Tennessee, for the appellant, Richard A. Leemis.

Stephen H. Biller, Memphis, Tennessee, for the appellee, Paul O. Russell, Jr.

## OPINION

Mr. Leemis was an employee of MSRG. Mr. Russell is the president of MSRG. In July of 1996, Mr. Leemis was terminated from his employment with MSRG. In July of 1997, with the recommendation of Mr. Russell, Mr. Leemis was hired by The Med as its Director of Planning and Research. Mr. Leemis' relationship with The Med was one of employment at will. Also in July of

1997, Mr. Leemis filed a complaint against MSRG regarding matters related to his former employment. It is alleged by Mr. Leemis that Mr. Russell subsequently contacted his superiors and other officers at The Med concerning the litigation pending between Mr. Leemis and MSRG, suggesting that The Med or its agents would be involved in the litigation. Mr. Leemis was terminated from his employment with The Med in November of 1997. According to Mr. Leemis, his termination was the result of the aforementioned conversations between Mr. Russell and his superiors and other officers at The Med.

In November of 1998, Mr. Leemis filed a complaint against Mr. Russell alleging that he intentionally interfered with Mr. Leemis' employment relationship with The Med and procured the termination of his employment. Mr. Russell subsequently filed an answer (1) denying that he intentionally interfered with Mr. Leemis' employment relationship with The Med, (2) noting that Mr. Leemis did not have an employment contract with The Med and was therefore an at will employee, and (3) requesting that Mr. Leemis' complaint be dismissed for failure to state a cause of action upon which relief may be granted. Mr. Russell then filed a motion for summary judgment accompanied by the affidavit of Deanie Parker, the Vice-President of Marketing at The Med, and certain documents relative to Mr. Leemis' employment with The Med. Mr. Leemis filed a response to the motion for summary judgment, accompanied by a second affidavit of Ms. Parker. Both affidavits state that Dave Bussone, interim CEO and President at The Med, informed Ms. Parker that Mr. Leemis' position was being eliminated. At the conclusion of a hearing on the matter, the trial court granted the motion for summary judgment.[1] An order reciting this ruling was entered by the court on August 26, 1999. In its order granting the motion for summary judgment, the trial court specifically found that Mr. Leemis had failed to state a cause of action upon which relief may be granted. This appeal by Mr. Leemis followed.

The sole issue raised on appeal by Mr. Leemis is whether the trial court erred in finding that he failed to state a cause of action upon which relief may be granted and in consequently granting Mr. Russell's motion for summary judgment. Summary judgment is appropriate only if the party seeking summary judgment demonstrates that there are no genuine issues of material fact and further shows that, under the undisputed facts, the moving party is entitled to a judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 528 (Tenn. 1998)(citing *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993)). When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of the nonmoving party and discarding all countervailing evidence. *See id.* at 529 (citing *Byrd*, 847 S.W.2d at 210-11). If there is a dispute as to any material fact or any doubt as to the conclusion to be drawn from the evidence, the motion must be denied. *See Dooley v. Everett*, 805 S.W.2d 380, 383 (Tenn. App. 1990)(citing *Phillips v. Pittsburgh Consol. Coal Co.*, 541 S.W.2d 411, 413 (Tenn. 1976)). Because this is solely a legal determination, our review of the trial court's ruling on a motion for summary judgment is *de novo* with no presumption of correctness. *See*

---

[1]The defense of failure to state a claim upon which relief can be granted may be raised by written motion. If matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment. See T.R.C.P. 12.02.

***White***, 975 S.W.2d at 528-29 (citing ***Robinson v. Omer***, 952 S.W.2d 423, 426 (Tenn. 1997); ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997)); T.R.A.P. 13(d).

Mr. Leemis alleged in his complaint that, through Mr. Russell's contacts with his supervisors and various officials at The Med, Mr. Russell intended to induce or procure the termination of his employment with The Med. Under Tennessee law, there is both a common law and a statutory cause of action for unlawful inducement or procurement of a breach of contract. ***See Polk and Sullivan, Inc. v. United Cities Gas Co.***, 783 S.W.2d 538, 542 (Tenn. 1989); ***Shahrdar v. Global Hous., Inc.***, 983 S.W.2d 230, 238 (Tenn. Ct. App. 1998); ***Riggs v. Royal Beauty Supply, Inc.***, 879 S.W.2d 848, 851 (Tenn. Ct. App. 1994); ***Campbell v. Matlock***, 749 S.W.2d 748, 750 (Tenn. Ct. App. 1987); Tenn. Code Ann. § 47-50-109 (1995). The statutory cause of action, which is found at section 47-50-109 of the Tennessee Code Annotated, is different from the common law cause of action in that it provides for an award of treble damages upon a clear showing that the defendant induced or procured the breach of contract.[2] ***See Polk and Sullivan, Inc.***, 783 S.W.2d at 542; ***Emmco Ins. Co. v. Beacon Mut. Indem. Co.***, 322 S.W.2d 226, 231 (Tenn. 1959); ***Shahrdar***, 983 S.W.2d at 238; ***Campbell***, 749 S.W.2d at 751; Tenn. Code Ann. § 47-50-109 (1995). In order to recover for unlawful inducement or procurement of a breach of contract, the plaintiff must prove each of the seven elements of the cause of action, which are as follows: (1) There must be a legal contract; (2) The wrongdoer must have knowledge of the existence of the contract; (3) There must be an intention to induce or procure a breach of the contract; (4) The wrongdoer must have acted maliciously; (5) There must be a breach of the contract; (6) The act complained of must be the proximate cause of the breach of the contract; and (7) There must have been damages resulting from the breach of the contract. ***See Polk and Sullivan, Inc.***, 783 S.W.2d at 543; ***McGaugh v. Galbreath***, 996 S.W.2d 186, 193 (Tenn. Ct. App. 1998); ***Shahrdar***, 983 S.W.2d at 238; ***Holloway v. Collier***, 969 S.W.2d 407, 409 (Tenn. Ct. App. 1997); ***Riggs***, 879 S.W.2d at 851; ***Hodges v. Reid***, 836 S.W.2d 120, 123-24 (Tenn. Ct. App. 1992); ***Campbell***, 749 S.W.2d at 751; ***Dynamic Motel Management, Inc. v. Erwin***, 528 S.W.2d 819, 822 (Tenn. Ct. App. 1975).

It is undisputed in the case at bar that Mr. Leemis did not have an employment contract with The Med and that his relationship with The Med was one of at will employment. The status of Mr. Leemis as an at will employee of The Med is evidenced by an employment application signed by Mr.

---

[2]Section 47-50-109 provides as follows:

It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract. The party injured by such breach may bring suit for the breach and for such damages.

Tenn. Code Ann. § 47-50-109 (1995).

Leemis and submitted to The Med which expressly provides that Mr. Leemis' employment is subject to termination at any time with or without cause and with or without notice. As noted above, in order to prevail under the theory of unlawful inducement or procurement of a breach of contract, the plaintiff must prove, among other things, the existence of a contract and the breach of a contract. Mr. Leemis did not allege in his complaint that he had an employment contract with The Med or that The Med's termination of his employment constituted a breach of an employment contract. We therefore conclude that Mr. Leemis' complaint does not state a cause of action for unlawful inducement or procurement of a breach of contract. Thus, to the extent that the trial court's order granting Mr. Russell's motion for summary judgment disposed of Mr. Leemis' inducement or procurement claim, we affirm the ruling of the trial court.

In addition to alleging inducement or procurement on the part of Mr. Russell, Mr. Leemis also alleged in his complaint that Mr. Russell intentionally interfered with his employment with The Med.[3] It is well settled that an individual has a property interest in his or her labor and has the right to work without unjustified interference. *See Forrester v. Stockstill*, 869 S.W.2d 328, 330 (Tenn. 1994); *Ladd v. Roane Hosiery, Inc.*, 556 S.W.2d 758, 760 (Tenn. 1977); *Large v. Dick*, 343 S.W.2d 693, 694 (Tenn. 1960); *Schwab v. International Ass'n of Bridge, Structural & Ornamental Iron Workers, AFL-CIO, Local No. 782*, 482 S.W.2d 143, 146 (Tenn. Ct. App. 1972). One who intentionally interferes with an individual's right to work without unjustified interference, causing the individual to be discharged from his or her employment, is liable in tort for the resulting damages. *See Forrester*, 869 S.W.2d at 330-31; *Ladd*, 556 S.W.2d at 760; *Large*, 343 S.W.2d at 694; *Dukes v. Brotherhood of Painters, Decorators & Paperhangers of America, Local Union No. 437*, 235 S.W.2d 7, 9-10 (Tenn. 1950); *Baldwin v. Pirelli Armstrong Tire Corp.*, 3 S.W.3d 1, 6 (Tenn. Ct. App. 1999); *Schwab*, 482 S.W.2d at 146. In order to recover for the tort of intentional interference with employment relations, the plaintiff must prove that the defendant intentionally and without justification procured the plaintiff's discharge from his or her employment. *See Forrester*, 869 S.W.2d at 331; *Ladd*, 556 S.W.2d at 760; *Dukes*, 235 S.W.2d at 10. In finding or denying liability for intentional interference with employment relations, the courts have relied primarily on two factors, the motive of the defendant and the means by which the defendant has sought to accomplish his or her motive. *See Forrester*, 869 S.W.2d at 332-33.

In his complaint, Mr. Leemis alleged in pertinent part as follows:

6. After the filing of the mentioned litigation, Defendant made contact or directed contact to be made with Plaintiff's superiors at The Med concerning the referenced pending litigation between Plaintiff and MSRG, Inc.;

7. Defendant suggested to Plaintiff's superiors and other officers at The Med that the litigation would involve The Med or its agents;

8. By his contacts with The Med, Defendant intended to interfere in Plaintiff's employment relation with The Med and to induce or procure the

---

[3]Although both of these legal theories may be applicable to a single set of facts, the tort of intentional interference with employment relations is a separate and distinct cause of action from the tort of inducement or procurement of a breach of contract.

termination of that status;

      9.  On November 19, 1997, Plaintiff's employment with The Med was abruptly terminated without any reason being given to Plaintiff;

      10.  Plaintiff's termination from employment with The Med was caused by the interference of Defendant;

      11.  As a result of Defendant's conduct, Plaintiff lost earnings and benefits of $70,000; and

      12.  Defendant's conduct was intentional and malicious and such as to justify the imposition of exemplary damages.

Included in these allegations are all of the elements necessary to state a claim for intentional interference with employment relations. Additionally, this portion of Mr. Leemis' complaint adequately addresses the alleged motive of Mr. Russell to interfere with Mr. Leemis' employment relationship with The Med and describes the means by which Mr. Russell allegedly attempted to carry out this motive. We recognize that Mr. Leemis was an at will employee of The Med and thus was subject to termination by The Med at any time and without notice. The courts of this state have previously recognized, however, that it is possible to unlawfully interfere with an at will employment relationship. *See Forrester*, 869 S.W.2d at 330; *Ladd*, 556 S.W.2d at 760; *Baldwin*, 3 S.W.3d at 6; *Schwab*, 482 S.W.2d at 146. Upon review of Mr. Leemis' complaint and the elements of the tort of intentional interference with employment relations, we conclude that the complaint does state a cause of action upon which relief may be granted. Therefore, to the extent that the trial court's order granting summary judgment to Mr. Russell disposed of Mr. Leemis' interference claim, we reverse this ruling. Finally, we remand the cause for a trial on Mr. Leemis' claim against Mr. Russell for intentional interference with employment relations.

      Based on the foregoing, the ruling of the trial court is affirmed in part, reversed in part, and remanded. The costs of this appeal are assessed against Mr. Russell, for which execution may issue if necessary.